IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| CORENA NASH, ) | |
| 8407 Silver Brush ) | |
| San Antonio, Texas 78254 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. _____ |
| ) | |
| INVERNESS TECHNOLOGIES, INC. ) | |
| Serve: Patricia Fenton Kevit ) | |
| 8941 Mountain Ash Drive ) | |
| Springfield, Virginia 22153 ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Corena Nash, by and through her undersigned counsel, hereby brings this claim for sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), and retaliation in violation of 42 U.S.C. § 2000e-3(a) against Defendant Inverness Technologies, Inc.

**PARTIES & JURISDICTION**

1. Corena Nash is an individual resident of the State of Texas and resides at 8407 Silver Brush, San Antonio, Texas 78254.

2. Inverness Technologies, Inc. ("Inverness") is a corporation formed under the laws of the Commonwealth of Virginia with its principal office located at 7619 Little River Turnpike, Suite 430, Annandale, Virginia 22003.

3. Jurisdiction is proper in this Court pursuant to 42 U.S.C. § 2000e-16(c) and 28 U.S.C. § 1331 relating to "any civil action or proceeding arising under any Act of Congress

regulating commerce."

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) (1) as Defendant resides in this jurisdiction.

5. Ms. Nash filed a formal complaint of discrimination with the Bureau's Equal Employment Opportunity Office ("EEO Office") on June 28, 2018 alleging discrimination on the basis of her gender and retaliation.  The EEO Office issued Ms. Nash a Right to Sue letter, which was received by her on April 2, 2019.  Fewer than 90 days have passed since she received the letter.  Accordingly, Ms. Nash exhausted her administrative remedies and may pursue her claims in this Court.

## FACTS

6. Ms. Nash is an experienced government contractor who began working in Kuwait on a Transition Assistance Program ("TAP") XXI contract (the "Contract") on February 1, 2017.  Ms. Nash was originally employed by Serco, Inc. ("Serco"), a subcontractor of Inverness, until August 2017 when Inverness terminated Serco and hired Ms. Nash and some other Serco employees directly.  Among the Serco employees hired by Inverness were Maria Cecilia Stephens and Stanley Paynter.  Ms. Stephens was employed as a career counselor, Mr. Paynter as a financial counselor, and Ms. Nash as a contract installation manager.

7. Ms. Nash consistently received positive feedback and commendations from the military customer.

8. Ms. Nash reported to Jim Springle while employed by Inverness.

9. During her employment with Serco, Ms. Nash was entitled to housing per her international agreement that was paid as an addition directly in her salary.  The pay increase

was called a "provision."

10.     When Inverness hired Ms. Nash, Ms. Nash was told by Mr. Springle that she would receive the same benefits provided for in her International Agreement with Serco, which included the housing accommodation.  However, when Ms. Nash received her International Agreement from Inverness, there was no term providing for the housing allowance.  Ms. Nash's colleague Mr. Paynter, however, did receive such an allowance.

11.     Ms. Nash inquired about her housing allowance in a series of emails with Mr. Springle in August of 2017.   Mr. Springle responded to Ms. Nash by making sexist inquiries regarding Ms. Nash's husband, who was also a contractor in Kuwait.  Specifically, Mr. Springle asked Ms. Nash whether her husband was receiving a housing allowance through his own employment. There was no legitimate basis for that inquiry as Ms. Nash's entitlement to a housing allowance was not based on her marital status or sex.

12.     Ms. Nash's male co-worker, Mr. Paynter, was never questioned about his marital status or his wife's employment, even though his wife was also living in Kuwait with him.

13.     Mr. Springle pursued his discriminatory inquiry further by demanding that Ms. Nash provide him a copy of her husband's contract.  Ms. Nash, of course, refused to comply with the discriminatory request and informed Mr. Springle that placing an extra-contractual condition on her contracted-for employment benefits, based on her marital status, was sex discrimination.  Mr. Springle refused to meaningfully respond to Ms. Nash's claim of discrimination. Accordingly, in accordance with company procedures she elevated her claim to Crystal Vega, the deputy program manager, on August 31.  Ms. Vega took no action on the claim and refused to remedy the discriminatory treatment and provide the

housing allowance.

14. After Ms. Nash complained about the discriminatory treatment, Mr. Springle became hostile toward Ms. Nash, became overly and unfairly critical of her work, and became cold and abrasive to her.

15. The hostile treatment got worse on September 21, 2017 when Ms. Nash informed Mr. Springle that she was pregnant and that, pursuant to Kuwait labor laws, she intended to take 70 days of maternity leave and then return to her position. His conduct became more hostile and abrasive thereafter.

16. Ms. Nash reported Mr. Springle's hostile behavior in retaliation to her discrimination claim and her announced pregnancy to Elizabeth Lemonds, a human resources representative for Inverness, on October 13, 2017. At this initial phone meeting, Ms. Lemonds promised that she would raise Ms. Nash's concerns about discriminatory denial of a housing allowance and retaliatory hostile treatment to Inverness's upper management. After seeking additional information a few weeks later, Ms. Lemonds suddenly ceased communicating with Ms. Nash about her discrimination complaint.

17. In addition, thereafter Ms. Lemonds and Inverness refused to provide Ms. Nash with contractually guaranteed medical insurance through the company's insurance plan. Per the terms of Ms. Nash's International Agreement with Inverness, she was entitled to participate in Inverness's insurance plan and could enroll in the plan during benefits enrolment, which occurred for Inverness in November each year. Ms. Nash requested the information necessary to enroll in Inverness's insurance program multiple times in November 2017, but Ms. Lemonds and Inverness refused to provide Ms. Nash with the necessary information and paperwork. As a result, Ms. Nash was not permitted to enroll in

the insurance program.

18. Inverness was also required under Ms. Nash's International Agreement to provide, at no cost to Ms. Nash, transportation to and from work. Inverness failed to do so, but provided Mr. Paynter with this benefit.

19. The Company's discriminatory and retaliatory conduct culminated on January 25, 2018 when Ms. Nash was terminated without warning via a conference call when she was thirty-five weeks pregnant.

20. After Ms. Nash's termination, Inverness continued its discriminatory and retaliatory conduct by refusing to provide Ms. Nash with the benefits to which she was legally entitle. Inverness refused to pay for Ms. Nash's transportation back to the United States, although the transportation was contractually required by her International Agreement. Inverness also refused to pay Ms. Nash three months' severance pay, which was required under Kuwait Labor Law and the terms of Ms. Nash's International Agreement which made Kuwait Labor Law applicable to her employment.

21. After Ms. Nash was terminated, she and her family also continued to suffer other harm as a result of Inverness's illegal contract. When Ms. Nash was terminated, she was forced to return to the United Sates, as she no longer had a valid work VISA to remain in Kuwait and Ms. Nash's husband was forced to resign his position in Kuwait and return to the United States with her.

### COUNT I
### Discrimination in Violation of Title VII

22. Ms. Nash re-alleges and incorporates by reference paragraphs 1 through 21 as if set forth fully herein.

23. Defendant, with the intent of discriminating against Ms. Nash on the basis of

sex, including her pregnancy, terminated Ms. Nash in violation of Title VII, refused to provide her with a housing allowance, refused to provide her with the opportunity to participate in the company's medical insurance program as contractually guaranteed, refused to provide her with transportation to work as contractually guaranteed, and refused to provide her with her post-termination benefits, including three months' severance under Kuwait Labor Law and with transportation back to the United States.

24. Ms. Nash's sex, including her pregnancy, were the motivating factors for the foregoing conduct.

25. As a direct and proximate result of Defendant's discriminatory conduct, Ms. Nash has suffered and continues to suffer injury and damage in the form of lost back and future wages and benefits of employment, emotional harm, mental anguish, anxiety, stress, depression, lost earnings capacity, lost career and business opportunities and advancement, damage to reputation, humiliation, and embarrassment.

26. Defendant engaged in said conduct intentionally, maliciously, wantonly, oppressively, and/or with such recklessness and gross negligence as to evince a conscious disregard for the rights of Ms. Nash.

**WHEREFORE**, Plaintiff Corena Nash prays that the Court enter judgment against Defendant and in her favor as follows:

    A. Compensatory damages in an amount of not less than $500,000 for lost wages and other benefits of employment, emotional harm, pain and suffering, and reputational harm;

    B. Punitive damages in an amount not less than $500,000;

    C. Reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 2000e-

5(k); and

    D.    Such other and further relief as the Court deems just and proper.

## COUNT II
## Retaliation in Violation of Title VII

27. Ms. Nash re-alleges and incorporates by reference Paragraphs 1 through 21 as if set forth fully herein.

28. Ms. Nash openly opposed, challenged, and reported sex discrimination on several occasions, including by giving notice of her discrimination claim based on denial of housing allowance to Mr. Springle and discrimination based on the denial of the housing allowance and retaliatory hostile treatment by Mr. Springle to Ms. Lemonds.

29. After and as a direct and proximate result of Ms. Nash exercising his rights under Title VII, the Defendant with the intent of retaliating against Ms. Nash, engaged in a pattern of retaliatory behavior as described herein.  As described above, Inverness:

    A.    Unfairly and unreasonably ostracized Ms. Nash and treated her hostility and abrasively;

    B.    Refused to provide Ms. Nash with contractually guaranteed transportation to work and the opportunity to participate in the company's medical insurance program;

    C.    Terminated Ms. Nash's employment;

    D.    Refused to provide Ms. Nash with the benefits which she was legally entitled to upon termination, including transportation back to the United States and three months' severance pay.

30. Ms. Nash's opposition to, challenges to, and reports of discriminatory treatment were the motivating factors for the foregoing retaliatory conduct.

31. The foregoing conduct was designed to and was sufficient to discourage and dissuade a reasonable person from pursuing or aiding in the EEO process or opposing, challenging, or reporting discriminatory conduct. The conduct was so severe that it ultimately resulted in Ms. Nash's discharge and forced return to the United States.

32. As a direct and proximate result of the Company's discriminatory conduct, Ms. Nash has suffered and continues to suffer injury and damage in the form of past and future loss of income and benefits of employment, lost career and business opportunities and advancements, damage to reputation, humiliation, embarrassment, fear of job loss, diminished self-confidence and self-worth, feelings of helplessness and hopelessness, fear and concern for her future ability to earn a living, and emotional distress.

33. Due to the conscious, wanton, and or reckless disregard for Ms. Nash's protected rights and the severity of the Company's conduct, Ms. Nash is entitled to punitive damages.

**WHEREFORE**, Plaintiff Corena Nash prays that the Court enter judgment against Defendant and in her favor as follows:

A. Compensatory damages in an amount of not less than $ 500,000 for lost wages and other benefits of employment, emotional harm, pain and suffering, and reputational harm;

B. Punitive damages in an amount not less than $500,000;

C. Reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 2000e-5(k); and

D. Such other and further relief as the Court deems just and proper.

              Respectfully submitted,

              _____/S/_____
              Nicholas Hantzes, VSB # 23967
              Michael Hall, VSB # 85481
              HANTZES & ASSOCIATES
              1749 Old Meadow Road, Suite 308
              McLean, Virginia 22102
              Tel: (703) 378-5000
              Fax: (703) 448-4436
              nhantzes@hantzeslaw.com
              mhall@hantzeslaw.com
              *Counsel for Plaintiff*

## DEMAND FOR JURY

Plaintiff hereby demands a jury on all issues to which he is entitled to a jury.

              _____/S/_____
              Nicholas Hantzes, VSB # 23967
              Michael Hall, VSB # 85481
              HANTZES & ASSOCIATES
              1749 Old Meadow Road, Suite 308
              McLean, Virginia 22102
              Tel: (703) 378-5000
              Fax: (703) 448-4436
              nhantzes@hantzeslaw.com
              mhall@hantzeslaw.com
              *Counsel for Plaintiff*